Please be seated, thank you. Please call the next case. C-1338, Village of Villa Park v. Johnson. Counsel, you may proceed. May it please the court. Voting counsel. My name is Jeff Powell and I represent the Plaintiff Appellant of Village of Villa Park in this matter. The Plaintiff Appellant has two issues that I would like to raise on its appeal. First is whether the Commission's decision that an employee's accident arose out of and in the course of his employment is against the manifest weight of the evidence. And second, whether or not his condition of well-being to his back is cause-related to said accident. By way of background, an employee is employed by the employer as a community service officer. His duties involve handling ordinance complaints, theft reports, accident reports, and also parking ordinances. But in order to bring you to fully understand what occurred on April 5, 2007, I'll have to direct your attention to about three months prior. On January 13, 2007, an employee was at his vacation home in Wisconsin when he injured his knee. He slipped on a patch of ice. Later that day, while still at his vacation home in Wisconsin, he fell off of a wood pile, again, injuring the same knee. He presented to the emergency room, underwent an MRI that revealed complex tears in the knee. Fast forward back to April 5, 2007. He is working for the employer. His surgery for the knee that was previously recommended, I forgot to add, was scheduled for May 2, 2007. He wanted to make sure that he had his FMLA in order. So now he's back to work in April, awaiting his surgery in May. On April 5, 2007, he was at the employer's. What was wrong with his knee? He had complex tears. Did it cause somebody to limp? He was not limping as of April 5, 2007, no. He wasn't limping. He was not limping, that's correct. That's not what the deputy chief said. Deputy chief said he was limping. Sure. In his testimony and the employer's testimony, I believe he said he was not walking with a limp when he returned to work. Deputy chief testified that he had noticed him limping for a period of time from January all the way through, I believe, April. Okay. And you introduced another witness, a patrolman, who said he wasn't limping. That's why I asked you, what was the injury to his knee? Did that cause somebody to limp? He did have complex tears. If the testimony isn't there that the chief deputy did see him limping on occasion, I wouldn't argue with you about that. I would offer, though, that I believe in his direct testimony or throughout his testimony, meaning him being the employer, that he was not walking with a limp when he returned to work. Is the village disputing the fact that when he was injured he was using the stairs in order to perform his job? That's not in dispute, is it? He was at work at the time. He was walking down the flight of stairs. The first application that the commission discussed deals with the in the course of, and they applied the personal comfort doctrine. The main concern that the employer has with regard to this application is that if you look to the previous cases, such as Illinois Consolidated or the cases cited by my opponent, whether that be Hunter or Sears, we are dealing with a personal comfort doctrine where someone is going to the bathroom in order to apply that. Now, where was he going when he was going down those stairs? We knew he was going, and according to his testimony, he was heading to the locker room. We weren't sure exactly. We don't know. Why do you know it was personal comfort? I'm sorry? Why do you say it was necessarily personal comfort? I'm not saying it was personal comfort. I'm arguing that it was not personal comfort. I'm having a hard time figuring out what we're disputing. Is the village contending that he was not required to ascend and descend the stairs during the course of the day to carry out his job? Is that the village's position that he doesn't use the stairs? The village is not disputing the fact that he uses the stairs, correct. Okay. I think that would be ridiculous if you tried to dispute it with any officer who is working in a police department, okay? Correct. He's using the stairs numerous times a day to carry out his job responsibilities, okay? And, you know, his knee gives out. Why is that not compensable? It's not compensable because it wasn't arising out of his employment. Arising out of. Maybe it was arising if he was. The arising out of component is what we're discussing. There's no question it was in the corset. Is there a question about that? No. The employer will. . . He was working and he was in their facility. Correct. So how could it not be in the corset? I think the stronger argument, and I agree with you, is the arising out of. . . Butig testified on numerous occasions during the period from January 13th, 2007, to April 5th, 2007. He observed a claimant walking with a limp. And it was Officer Schroeder that you put on that said he never noticed the claimant limping. And what was wrong with his knee? He had complex tears in the knee. Can you walk with complex tears without a limp? I believe there are times where you may have to limp and there are times where you may not have to limp. So depending on what each person saw. How do you respond to this argument reduced to its simplest terms? We know that the injury, the accidental injury, doesn't have to be the sole or the only cause, correct? You're not disputing that under the case law, are you? Correct. Okay. You're also not disputing the body of law that says the employer takes the employee as they find him, correct? That's correct. So if he's got a preexisting injury that makes him more vulnerable to further injury or aggravation and he's doing his job, again, what is the breakdown in the analysis? Tell us why it's not compensable. Even if he has a preexisting condition exactly as you describe it and it happened outside the workplace. Well, as you know, the arising out of prong requires that the origin must be in some risk connected with Going up and down the stairs is, in fact, clearly the risk. But again, if we're dealing with, when we deal with falls, as you know, there are three different types of falls that have been talked about in case law. I would suggest that employee's fall in this case was an idiopathic fall. Why is it an idiopathic fall? An idiopathic fall is a fall that if we know the reason why it happened, it happened because of a personal internal, I guess, reason that's personal to the worker. So in order to make that compensable, though, according to the Elliott case, if the employment significantly contributed to the injury, that placed the employee in a position increasing the dangerous effects of the fall. Well, the case law says walking up and down stairs is a neutral risk. And there has to be a showing of a risk greater than the general public. That can be either qualitative, like a defect, or quantitative. In other words, you have to go up and down the stairs more than the general public. And what the commission specifically said here is, this is a quote, In this case, Petitioner was engaged in employment in a place where he had a reasonable right to be and was exposed to a greater risk than the general public because he was continually forced to use the stairway to seek personal comfort during his work day. He was also required to use the stairway to complete work-related activities. So they're saying on a quantitative basis he was required to use the stairs more than the general public, and therefore it's compensable. That's their finding of fact. Correct. Why is that against the manifest way to the evidence? If you look, it's about six to eight times per his eight-hour shift. So if we divide that out, it's a little less than an hour. Going back to your initial point, when we are discussing a stairwell, in his testimony he testified that he wasn't carrying anything. He wasn't hurrying. There were no defects. That's a qualitative analysis. They didn't use that analysis. They used a quantitative analysis. Are you saying there has to be a defect on the stairs for him, for this injury to be compensable? Is that your argument? I am not. I'm saying that when dealing with a set of stairs, those are factors that the Court looks at. Clearly, you know, if we're talking about someone that's carrying or hurrying, things like that. I'm trying to call out the essence of your argument. I suppose it could be that he's not ascending and descending the stairs enough under the quantitative analysis, right? That would be our argument, six to eight times over an eight-hour shift. But there's one other fact you've got to add in. You knew he had a bad knee. Your deputy chief said he knew it. He'd been told he had a bad knee. Now, is there a different analysis from a quantitative standpoint for making a healthy person go upstairs eight times a day as compared to sending somebody upstairs eight times a day when they have a bad knee? As far as I'm aware, he was working full duty, performing his normal job. We know he was. He was working full duty. But he still had a bad knee, and we all know that. He was going to be operated on within less than a month. Correct. So it really doesn't make any difference. And that's why the commission didn't give him a penny for the knee. Correct. The knee's all happened over there. But he fell down the stairs because he had to go up and down those stairs, or at least his theory is, and I think the commission's theory. He fell down those stairs because he was forced to go up and down those stairs as a condition of his employment. And he was forced to go up and down those stairs as a condition of his employment with the employer knowing full well he had a bad knee. Again, drawing the attention back to the fact that it was an idiopathic fall, at least from an employer's point of view, those falls are compensable pursuant to the Elliott case if the employment significantly contributed by placing employee in a position that increased the dangerous effects of the fall. Now, again. The dangerous effects of the fall is the back injury. Understood. At least according to the commission. And if you look in the record, the back injury is that he felt pain in his back, as opposed to I fell downstairs and the corner of my back hit a corner of the stairs. If we go back to the Nabisco case, the knives that the person or the worker was carrying contributed to the dangerous effects of that injury because, and I believe that he fell either on the knives or something happened along those lines where there was a contusion of some sort to the chest. So, again, we're increasing the dangerous effects of the injury or the fall. By simply walking down a staircase and the knee buckling and collapsing due to the preexisting condition, I don't believe that the back injury, when he felt pain in his back, is going to increase the dangerous effects of the fall pursuant to his employment. And, again, we're dealing with walking up and down a staircase. It's the employer's contention that while he did walk up and down the staircase, it wasn't an ongoing activity of his employment. It wasn't crucial to his job duties. I understand that he had to go down there to do some things for the employer. But we're dealing with a community service officer where he spent a lot of his time outside of this building. Well, okay, this always gets into this quantitative analysis. It's who decides. I mean, you could put on evidence, I suppose. There are specialists for everything to say that the normal person in their everyday activities only traverses stairs X number of times in a normal day. We don't have that here. So if you don't have that here in the evidence in the record, then who is tasked with the job of deciding what is greater than the general public against some type of thumb in the air, this is what the general public does? Whose job is it? Yeah, I mean, I understand in this case that there is no specific expert that has any of those opinions that were submitted here. I think if we look at the Elliott case, one of the strong points that they make is the need to walk down the stairs in that case when we're dealing with more of a security officer or a police officer who's working in a jail. The need to walk down the stairs weren't unique to his employment. And I think that's similar to the case at hand here where employees need to go up and down the stairs. We're not unique to his employment. The court in Elliott also made a strong point when they said that this injury could have happened while going up and down the stairs at his house or any sort of stairs. There was nothing about that specific stairway on that specific day that caused his injury to occur. Did Elliott, did the court in Elliott look at the number of times that he traversed the stairs? According to the case that I was printed, obviously I wasn't able to pull up the testimony from that court, but there wasn't actually any number of stairs that he was walking up and down. So unfortunately, I couldn't make the comparing and contrasting with that part of the argument with how often he goes up and down. So at this point, it's hard to know whether or not the Elliott court engaged in this quantitative analysis that we're talking about here. Correct. From my research of the Elliott case, that was not mentioned in there that it got into any of the quantitative part. He's got a little something more wrong with his back than just pain, doesn't he? Well, he claims that he felt pain. What I'd like to focus upon is the fact that he felt pain. Certainly there was a strain. I don't believe there were any herniated discs with the MRI. Lumbar MRI discloses a hyperthermia, whatever that is, of the facet joints posteriorly at L4-5 and L5-S1 and some focal disc herniation and spinal stenosis. No significant disc dissection, bulging, or herniation is what he's got. Right. And I understand that there was an injury that he's alleging following this fall. But, again, I think it goes back to the fact that it's employer's argument that this was an idiopathic fall. I don't believe that his employment significantly contributed to his injury by placing him, I guess, in an area where it would be a more dangerous effect of the fall. Again, we're dealing with a simple staircase. And, again, the effects of the fall, again, it's not as though he fell down the stairs and hit his back while he was going down the stairs. He felt pain in his back, and that's a subsequent back injury that he's currently dealing with. Again, the commission noted, and I think you alluded to it earlier, Your Honor, is that they did not find the knee. They did not award him anything with regard to the knee. It was just the back. So the employer sees that the court found that the knee was personal. The reason for the fall was due to his personal condition. So due to the fact of those two, and then including when dealing with idiopathic falls, whether or not his employment as a community service officer significantly contributed to the dangerous effects of his fall, the employer would argue that it did not. He was simply walking up and down a normal flight of stairs that didn't have any defects, had adequate lighting, he wasn't hurrying, he wasn't carrying anything, and, therefore, it did not arise out of his employment. So for all the above stated reasons, the employer would request that the commission's decision be reversed with regard to finding an accident and then also reversed with regard to awarding him benefits for the subsequent back injury. Thank you, counsel. Counsel, you may respond. May I please the court? Francis J. DeCipio on behalf of the defendant appellee, John Simons. Initially, counsel at arbitration argued that this was something not greater than the general public. That's clearly inaccurate, because in order to be in that area in the first place, where the stairs are, you have to be allowed to be buzzed through the reception area to get into the area where the stairs are. Excuse me. They indicated that because of the fact that there would be delivery people, such as delivery of pop or soda or other products that would go downstairs, that would be included in the general public. Again, that's clearly inaccurate because of the fact that you had to be buzzed in from an officer to get into that area in the first place. Well, that doesn't have anything to do with quantitative. Quantitative is just simply frequency of exposure. That's correct. In this particular case, the testimony was clear that at least before roll call, he would traverse those stairs at least two to four times. He would come in, change into his uniform, which meant he had to traverse down, go back up and check his mail, traverse up, and go back down for roll call. I believe Judge Popejoy very clearly identified in his opinion that all identified activities were not unreasonable. They were certainly fitting within the personal comfort doctrine, or they were there for the benefit of the employer, which means obviously going down for roll call or being down there for other reasons that attribute directly to the petitioner's employment allows this person to be in that particular area. And in light of the fact that he had a bad knee, yes, he traversed those stairs probably 15 or so times each day, 15 to 16 times per day. I believe that given those circumstances, his condition of ill-being regarding the back is directly related to his employment. Counsel indicated to this Court that there was nothing unique about him traversing those stairs. Well, the fact of the matter is also incorrect because of the fact that there was roll call down there. He had to attend roll call. There was no issue that he could not avoid going to roll call. It was clear that at least on some circumstances, his traversing up or down those stairs was unique to his employment. In any event, in a manifest way, we can only reverse the commission where an opposite conclusion is clearly apparent, right? That is correct. In this case, that's not even close. Okay. I have nothing further. Okay, thank you, counsel. Thank you. Counsel, you may reply. Just briefly, Your Honor. Opposing counsel just noted that employee, due to the fact that he had to go downstairs for the roll call, therefore the act of traversing the stairs was not unique to his employment. I would request that the Court look at the case in Elliott when we're dealing with a security or police officer who is walking in between floors of a prison. Clearly, he is going in between the different floors of a prison, traversing stairs to make sure that everything is fine and watching over the inmates. After reviewing those facts, the Court in Elliott still noted that it's not causally related because it did not arise out of his employment. So the fact that just because you're going in between stairs to perform some duties doesn't make it any less or doesn't make it, excuse me, unique to your employment. Again, the employer would request that the commission's decision with regard to causal connection or finding the accident arose out of it in the course of and also the causal connection with the bank be reversed as it is against the manifest way of the evidence. Okay. Thank you, counsel, both for your arguments on this matter. It will be taken under advisement. Written disposition shall issue. Justice Hudson, unfortunately, has a conflict and has to appear at another meeting. He is a fully participating member of this Court. He has had the briefs. This is for the next case, of course. He has the briefs, and he will have the benefit of the entire oral argument because, as you know, it is being recorded. So he will be a fully participating member of the panel.